DELTA & PINE LAND COMPANY v. WIRT ADAMS, STATE
REVENUE AGENT.

[48 South. 190.]

1. CHANCERY PRACTICE. *Appeal. Decree overruling a demurrer. Code* 1906, § 34.

An appeal from a decree overruling a demurrer to a bill in equity, under Code 1906, § 34, authorizing the granting of such appeals, should be denied where the principles of the cause are already settled and an appeal would result in unnecessary delay and expense.

2. SAME. *Taxation. Collection of back taxes. Suits for personal decrees. Code* 1906, § 4256. *State revenue agent. Supplemental bill in equity. Injunction against sale of property. Parties. Supreme court practice.*

Where a suit in equity was instituted by the state revenue agent to enjoin a corporation from disposing of its land until back taxes should be paid and for a personal decree for the amount of the taxes under Code 1906, § 4256, providing that every lawful tax levied by the state, a county or municipality, is a debt due by the person owning the property and may be recovered by action:—

(*a*) The proceeding is not an attachment in chancery and the bill need not contain the essential averments required in such case; and

(b) A supplemental bill, proceeding on substantially the same facts as the original one, but asking as additional relief a personal decree predicated of an adjudication, made after the filing of the original bill, upholding the validity of an assessment, does not present a new and different case, and may be properly allowed; and

(c) An injunction having been issued, upon rendition of a final decree for the taxes, it should provide that upon its enrollment the injunction should be dissolved, since the enrollment of the decree establishes a judgment lien on the property for the taxes; and

(d) The contention that the county tax assessors and collectors during the period when the taxes sued for should have been assessed are necessary parties to the suit, cannot be raised for the first time in the supreme court.

3. TAXES. *Back taxes. Code 1906, § 4256. Debt. Remedy. Action.*
Code 1906, § 4256, providing that every lawful tax levied by the state, a county or municipality, is a debt due by the person owning the property and may be recovered by action:—

(a) Creates an additional and more effective remedy by which the nature of the tax obligation is changed to that of a debt; and

(b) Applies as well to back taxes as to current ones, since the statutory method (Code 1906, § 4740) for collecting back taxes is not exclusive; and

(c) The use of the word "action" in the section does not confine the remedy to courts of law, since other statutes (Code 1906, §§ 4738, 4742, 4743) give the revenue agent authority to sue at law or in equity; but

(d) The section creates a new obligation to pay as well as a new remedy, can have no retroactive effect, and a personal decree in a suit thereunder cannot be rendered for back taxes due before its adoption, although assessed thereafter, since they were not debts but merely taxes.

4. SAME. *Hardships. Statutory construction.*
In determining the exclusive character of a statutory remedy for the collection of back taxes (Code 1906, § 4740) the fact that hardship would result from rendering personal judgments for such taxes, inconvenience be encountered because mistakes are frequently made in assessments as to the ownership of property and because through lapse of time evidence to disprove ownership might be lost is without weight, since the argument of inconvenience is for the legislature and not the courts.

5. EQUITY. *Pleading. Answer. Verification.*
Where at the end of an answer there was the statement, "Answer under oath waived," signed by solicitors for complainant, and the

· record did not show any agreement that the force of a sworn answer was to be given to it, or what the statement meant, the answer had only the force of an unsworn answer.

**6.** Taxation. *Collection. Actions. Parties. Code* 1892, § 4200.

Code 1892, § 4200, providing that in suits against delinquent taxpayers the assessor and tax collector shall be made parties, and, if it appear that the failure to pay was caused by their wilful default or negligence, judgment should be rendered against them for the revenue agent's compensation, does not apply to suits for back taxes, which the taxpayer declined to pay, and which could not be otherwise collected, because of its appeals and contests.

From the chancery court of, first district, Hinds county.

Hon. G. Garland Lyell, chancellor

Adams, state revenue agent, appellee, was complainant in the court below; the Delta & Pine Land Company, appellee, was defendant there. From a final decree in complainant's favor the defendant appealed to the supreme court. The facts are stated in the opinion of the court.

*Frank Johnston* and *McWillie & Thompson,* for appellant.

As will be seen the original bill, which alone relates to the injunction, admits that the defendant owned 15,000 or 20,000 acres of delta lands of a value largely more than the tax claim propounded and there is no allegation that the defendant is insolvent or that it owes any other money. The tax claim as shown by the decree rendered was not in fact for $45,000 as alleged, but $32,823.33 and common knowledge of the existing conditions in our section assures us that 20,000 acres of delta land are worth at least $400,000. Besides the land, the defendant had owned according to the claims of the bill solvent credits to an amount that yielded taxes in the large sum mentioned, and, if we take the rate of taxation during all the years to have been as high as three per cent., it must have had some $250,000 or $300,000 of them. As it is not alleged to have parted with any of them or to hold at this time any less sum in that form of property we see that the financial responsibility of

defendant was largely increased through this means. These solvent credits were promissory notes given by purchasers of the lands which could be advertised and sold under § 4341, Code of 1906.

The complainant could not have attached the lands in question without alleging that defendant had conveyed or was about to convey them with intent to hinder, delay and defraud its creditors, and he is seeking by way of injunction to accomplish the ends and purpose of an attachment without making the necessary averment. The reason for allowing an attachment against a debtor who is "about to convey" his property with fraudulent intent is because of the impending danger from which the creditor will suffer irreparable injury. The attachment law really defines what is impending danger, and limits it to those cases where a conveyance is "about" to be made. There must be impending danger to warrant an injunction. 10 Ency. Pl. & Pr. 947.

The complainant did not venture on an attachment because he would have had to allege that a sale of the lands was "about" to be made, yet the state of case required to sustain an attachment is just what is necessary where irreparable injury is relied on. The sale in both cases must be imminent and impending, but attachment would not have interfered with the right of the defendant to exercise its *jus desponendi* subject to the attachment lien, and it is against the policy of the law to impose restrictions upon the alienation of real estate. As to what should be alleged and proved to enjoin a sale of real estate on the ground of irreparable injury, we beg to refer to a noted text writer. High on Injunctions, §§ 22, 324.

As we have shown, there was no ground whatever for injunction and, the original bill being without merit, an effort to tack on to it was like hitching a horse to empty air. But, we find apart from this, that the amended bill did not propose to help out the injunction to which alone the original bill related, but set up a new and wholly different case demanding a decree *in*

*personam* against the defendant. We do not deem it necessary to argue the proposition that a proceeding designed merely to preserve the *status quo* of property subject to a tax claim so that it may be dealt with by the tax collector in the manner regulated by the statute (§ 4740) is a wholly different proceeding from one looking to the recovery of a personal decree against the delinquent for the amount of the taxes, a decree upon which he could be pursued to the ends of the earth even in cases where the property had been sold for taxes and failed to bring the amount demanded, payment of which could have been enforced out of all other and after acquired property. In the origianl bill it was alleged that the assessments were at the time of its filing the subject of contest, and in the amended bill it is alleged that the contests had been disposed of by the judgments of the circuit and supreme courts approving the assessments. This is true; and no one knew better than the complainant that he could not maintain a proceeding for a personal decree while the assessments remained the subject of contest, if at all. It is well settled that a demurrer is well taken to an amended bill that introduces an entirely new case and asks different relief; and especially is this true where the ocurrence on which the amendment is based is one that took place after the original bill was filed. *Wright v. Frank,* 61 Miss. 32; *Miazza v. Yerger,* 53 Miss. 135, 140; *Walker v. Brown,* 45 Miss. 615.

The amended bill proposed to "change the frame and essential character of the bill." *Clark v. Hull,* 31 Miss. 520.

It should be remembered that the proceeding resulting in the assessment in question was one inaugurated by the complainant as state revenue agent under Laws 1894, now § 4740, Code of 1906. The proceeding authorized by this statute is a special one and has relation only to property that has escaped taxation "by reason of not being assessed," and in no wise relates to taxes on property which was duly assessed by the assessor and are subject to collection by the ordinary statutory methods having reference to such taxes. It provides for assessment by the tax

collector on the direction of the revenue agent and for action by the board of supervisors or municipal authorities approving or disapproving his action, and in respect to the collection of the taxes so assessed provides as follows:

"If the assessment be approved and no appeal be taken and the taxes shall not be paid within thirty days thereafter, the property, if it be real estate, shall be ordered sold as provided by § 4367, and if it be personalty, the tax collector shall proceed to collect by distress or otherwise."

Taxes are not debts, and no statutory declaration can make them such. They are held not to be assets of the municipal corporation to which they are due; they arise out of no contractual obligation either express or implied; they cannot be made the subject of garnishment and a set-off cannot be made available against them. The levy and collection of them belong to a department of the government which our constitution makes entirely separate from the judicial department, and as said by the federal supreme court in a case in which the aid of equity for their collection was refused "the courts can have nothing to do with them, unless appealed to on behalf of the public to prevent their diversion (after collection) from the public use." *Merriweather v. Garrett,* 102 U. S. 513, 515; Mississippi Constitution 1890, §§ 1, 2.

As to the general proposition that taxes are not debts see the following: Cooley on Taxation, p. 13; *Lane County v. Oregon,* 7 Wall. (U. S.) 71.

Under Code 1892, § 4200, now Code 1906, § 4749, it is doubtful whether any suit against a delinquent tax payer is maintainable which does not include the assessor and tax collector as parties. The statute explicitly provides, and for a wise reason hereinafter referred to, that they shall be made parties.

Whatever may be said as to the power of the judiciary in general we insist that courts of equity cannot be made tax collecting agencies. This court has declared they have no jurisdiction in cases "involving simply the question of taxation." *Coulson v.*

*Harris,* 43 Miss. 744. And they have no power to correct as-·sessments. *Brooks v. Shelton,* 47 Miss. 243. And will not aid tax proceedings when invoked for the reformation of a tax deed,. the element of contract being in such cases wholly lacking and the proceeding *in invitum.* *Bowers v. Andrews,* 52 Miss. 596;. *Cogburn v. Hunt,* 56 Miss. 718; *McQueen v. Bush,* 76 Miss. 283, 24 South. 196.

Tax claims are akin to forfeitures which equity will not enforce. *Mississippi R. Commission v. Gulf, etc., R. Co.,* 78 Miss. 750, 29 South. 789.

The complainant, appellee, here, relies on Code 1906, § 4256, but it will be observed that this section which declares all lawful taxes to be "debts" provides that they "may be recovered by action." This means that an action at law may be maintained for taxes of the kind referred to, an action of debt, which is the appropriate form of action for the recovery of a debt. The legislature it is thus seen has never given equity courts jurisdiction of such claims, but confined them to the courts of law. In view of the relation of equity courts to tax claims as fixed by judicial decisions, this must be the true meaning of the section. We say, therefore, that if the amount of the taxes could be adjudged against the property owner at all, it would only be done in the manner pointed out by the statute, that is to· say, by action at law. The very law making taxes debts, provides that recovery shall be by action, which means action at law..

Code 1906, § 4256, has no relation to the back taxes on property that has escaped taxation by reason of not being assessed and in respect to which section 4740 conferred a special and extraordinary powers upon the state revenue agent and the tax collectors of the state. The former section does not appear in the· Code chapter relating to the state revenue agent, but in that covering the general subject of revenue. The latter section (4740)· provides a special method of collecting back taxes on property that has escaped taxation by reason of not being assessed, and

directs how the taxes on land shall be collected and commits the collection of both to the regular tax collector. It provides that he shall sell the land for the taxes due on it and shall collect the taxes on personalty by distress or otherwise, the words "or otherwise" apparently having relation to the sale of debts under Code 1906, § 4341.

The proceeding is a special one in relation to unassessed property and a special method of collecting is prescribed which does not include the bringing of a suit, and with the collecting the revenue agent has nothing whatever to do. We insist that as to the special class of taxes involved, the statute is the exclusive remedy and must be followed. On the general proposition that the methods provided by the legislature for the collection of taxes are exclusive and must be conformed to, we cite the following, some of which rest on the proposition that taxes are not debts and may therefore be without relevancy under a system which, like ours, recognizes them to be debts for certain purposes: *Faribault v. Misener,* 20 Minn. 396; *Montezuma, etc., Co. v. Bell,* 2 Colo. 175; *State v. Southwestern R. Co.,* 70 Ga. 11; *Biggins v. People,* 96 Ill. 481; *Cole v. Muscatine,* 14 Iowa 298; *Dubuque v. Railroad Co.,* 39 Iowa 56; *Crawford County v. Lamb,* 110 Iowa 355; *Plymouth County v. Moore,* 144 Iowa 700; *Johnston v. Tisdale,* 50 Me. 376; *Cropo v. Stetson,* 8 Met. (Mass.) 393; *Andover Turnpike v. Gould,* 6 Mass. 43; (4 Am. Dec. 80); *Macy v. Nantucket,* 121 Mass. 351; *Raynsford v. Phelps.* 43 Mich. 342 (38 Am. Rep. 189); *Alexander v. Helber,* 35 Mo. 334; *Carondelet v. Picot,* 38 Mo. 125; *State v. Snyder,* 139 Mo. 549; *Nebraska City v. Gas Co.,* 9 Neb. 339; *Chamberlain v. Woolsey,* 92 N. W. 181; *Hibbard v. Clark,* 56 N. H. 158, (22 Am. Rep. 432); *Camden v. Allen,* 26 N. J. L. 399; *American Glucose Co. v. State,* 43 N. J. Eq. 280; *McHenry v. Kidder County,* 8 N. Dak. 417; *Harrison County v. Gray,* 12 S. Dak. 124; *Pierce County v. Merrill,* 19 Wash. 175; *Old Dominion, etc., Co., v. Board of Education,* 18 W. Va. 441.

The question of the exclusiveness of the particular statutory remedy involved herein seems to have already been settled by this court. *Morris Ice Co. v. Adams,* 75 Miss. 410, 415.

As men are not born into the world for the sole purpose of being taxed, it is not imputing too much consideration to the legislature to say, in respect to these tax claims against property that had not been assessed to a particular person, the remedy should end with the subjection of the property so far as that person is concerned, for is it well known that mistakes are frequently made in assessments as to the ownership of property, and in the lapse of time, the evidence that would disprove ownership may become lost or destroyed. The harsh effect upon private rights of making taxes the basis of a personal liability has long been recognized. Some courts hold that such legislation is unconstitutional, and the state of Louisiana has prohibited it by an express constitutional provision. *City of Seattle v. Yeslie,* 1 Wash. Ter. 571; *City of Seattle v. De Wolfe,* 17 Wash. 349, 351, S. C. 49 Pac. Rep. 553; *Taylor v. Palmer,* 31 Cal. 240; *Randolph v. Bayne,* 44 Cal. 214; *Gillis v. Cleveland,* 87 Cal. 214; *Manning v. Den.* 20 Cal. 610; *Gest v. Cincinnati,* 26 Ohio St. 275; *Moale v. Mayor,* 61 Md. 224; *Broadway Baptist Church v. McAlu,* 8 Bush. (Ky.) 508; *Allen v. Drew,* 44 Vt. 174; *Parker v. Bank,* 46 La. Ann. 563.

We take it that no one will deny that the statutory remedy should be exhausted before resort is had to an action for the recovery of a judgment *in personam.* The authorities on this subject speak in no uncertain terms. *Doniphan County v. Allen,* 5 Kan. App. 122; *People v. Ballerino,* 99 Cal. 600; *McCallum v. Bethany,* 42 Mich. 457.

The decree in this case includes taxes from 1886 to 1894 both inclusive, and prior to the time when the Code of 1892 went into effect, November 1, 1892, there was no provision of law making taxes debts or providing for their recovery by action. We insist that Code 1892, § 3747, now Code 1906, § 4256, cannot be given a retroactive effect so as to authorize a judgment *in per-*

*sonam* for the taxes of 1886 to 1892 both inclusive. In other words, the decree includes taxes for six years, as to which no recovery was allowable.

It is of the essence of new laws that they relate to new cases, and they will not be held to operate retroactively unless such intent expressly appears. It is really upon this principle that the repeal of a law under which a tax has accrued is held not to affect the question of liability, and what is law when it works in favor of the state should be law when it works in favor of the citizen. The change in the law did not affect the remedy merely; it gave a new right, the right to follow the delinquent everywhere and subject his other property wherever found.

A statute attempting to create a personal liability to pay assessments previously made on property, where no liability existed when the assessments were made, is unconstitutional. 130 Mich. 238; S. C. 89 N. W. Rep. 932; *Fitch v. Elcho County*, 8 Nev. 271; *Pacific, etc., Tel. Co. v. Com.*, 66 Pa. St. 70.

*W. R. Harper*, for appellee.

The injunction was granted under and by virtue of the provisions of Code 1906, § 923.

Manifestly, since under the allegations of the bill the company would be rendered insolvent by a sale and distribution of the proceeds of the land which constituted the sole capital stock, it was the duty of a court of equity to restrain the corporation from committing such unlawful act, to prevent it beforehand from doing the very thing that the statute says the company should not do. This injunction was granted under this particular and peculiar statute, which has reference only to corporations, and not under the general law in reference to injunctions or attachments.

A reading of the amended bill will show that no new cause of action is set out. The very gist of the original bill was that defendant was largely indebted to the complainant for taxes past due which had been duly assessed, while the amended bill mere-

ly goes into the details of such indebtedness by years and amounts, and alleges that the assessment therefore duly made, according to law, by the board of supervisors, had been duly affirmed by the supreme court. This fact doubtless could have been shown at the hearing without any such allegation, and was wholly unnecessary. The vital fact was that the board of supervisors had duly made the assessment. So the amended bill is not made to depend on any fact occurring subsequent to the filing of the original bill.

Much is said by appellant about taxes not being debts at common law. We shall not undertake to go at length into that vexed question. Whatever may have been the rule as to whether or not a personal judgment could be had for taxes, certain it is that the case of *Morris Ice Company v. Adams*, 75 Miss. 410, does not establish any such doctrine. That case merely holds that a personal judgment could not be had in that particular form of action, which was only and merely an appeal from an order of the board of supervisors making an assessment. Manifestly, since the board of supervisors had no jurisdiction to render a personal judgment in any case against any one, none could be rendered by the appellate court. It was, therefore, error for the appellate court to undertake so to do. That case decides that much and no more.

But since that case was decided our legislature enacted a statute, Code 1892, § 3747, Code 1906, § 4256, which makes taxes a debt.

There is some sort of contention by appellant that this statute is unconstitutional as to the two or three years' taxes, if any, due previous to its enactment. If this be taken as a serious contention, we reply that this statute only affects the remedy and not the right, even if everything that appellant claims, as to the nature of taxes, be true, and the legislature has a perfect right to change the remedy as to past due taxes, as well as taxes in the future; that these taxes were not assessed at all until long after this remedy was given, and clearly are governed by the law in

force when they became due and eligible, and a binding obligation at the time of the assessment.

But it is urged that because one remedy is given in § 4740, such a remedy must be resorted to to the exclusion of the remedy given by Code 1906, § 4256. But a simple reading of both sections makes it too plain for argument that the right to sue and recover a personal judgment is a separate, independent and cumulative remedy, to be resorted to in the first instance if necessary, without regard to any other remedy.

Argued orally by *Frank Johnston* and *T. A. McWillie*, for appellant, and by *W. R. Harper*, for appellee.

WHITFIELD, C. J., delivered the opinion of the court.

The original bill of complaint in this case, filed by the Revenue Agent, contained substantially the following averments: that he had caused the appellant to be back-assessed for taxes for the years from 1889 to 1905, inclusive, due to the state, county of Hinds, and city of Jackson; that said assessments were for solvent credits owned and held by the appellant during said years, and on which no taxes had been paid; that the said assessments were all contested by the appellant, and that the taxes due on said assessments could not be collected by distress or "otherwise," by reason of appeals and contests made by appellant; that appellant was due about $45,000 of such taxes, and declined to pay anything; that appellant had, originally, a capital stock represented by half a million acres of wild land in this state; that it never had any other capital, and that the appellant had sold all the said lands except 15,000 to 20,000 acres, and distributed the proceeds as dividends among its stockholders; that the appellant was trying to sell all the remaining lands so as to apportion the proceeds of sale as dividends among the stockholders, so as to place the property and effects beyond the reach of his creditors; that said course on the part of the appellant would render it insolvent before said taxes could be col-

lected, or secured by levy, as required by law, and that thus the state, city and county would be defrauded of their revenues; and it was further alleged that under sale for taxes it was doubtful if the said remaining lands would bring enough to satisfy the taxes due. The prayer of the said original bill, amongst other things, was for the issuance of a writ of injunction to prevent the appellant from making this said sale until the taxes should have been paid. The injunction issued as prayed for, and the writ was served on March 28, 1907.

Nothing further was done in the cause until April 21, 1908, when the complainant duly obtained leave of the court to file an amended and supplemental bill, which was accordingly duly filed on April 22, 1908. This amended bill set out substantially the same facts as the original bill; but it prays for new relief, in that it asks for a personal decree for the amount of taxes against the appellant. This amended bill stated that the revenue agent had caused the appellant to be back-assessed for the taxes hereinbefore described for the years 1886 to 1904 inclusive, and it then stated that all of said assessments had been finally adjudged legal and valid by this court, referring to the case of *Adams v. Delta & Pine Land Co.*, 89 Miss. 817, 42 South. 170; that the appellant had no property in Hinds county, and then, with great detail, set out the taxes for each year due the state, county and city from 1886 to 1904, inclusive; and the prayer was for a personal decree against the appellant for the sum of $32,823.38, 38, being the amount of taxes as plainly and clearly shown in detail in the amended bill. It will thus be seen that there is no difference between the original bill and amended bill in substance; the only difference being as to the prayer as to the additional relief sought. But this relief is sought on substantially the same state of facts as made up the case as shown in the original bill. It will here be noted that there had been in the case above referred to a final adjudication by this court of the legality and validity of all these assessments, and therefore a conclusive judgment, as between these parties, that the amount of

the taxes so levied was due as taxes from the appellant. This was not the occurrence of any new fact between the filing of the original and amended bill, within the meaning of the rule of pleading as to an amendment making a new case. It was simply the statement, in the amended bill, of the decision of this court on the very same facts declaring the assessment valid, and the prayer, based on such decision, and upon the statute to be noted later, for a personal decree. On the 13th of June, 1908, the appellant took its first step by filing a demurrer to the original and amended bills which demurrer was by the court overruled. The second, fourth, seventh, eight, ninth, and tenth grounds of demurrer only need be noticed, and they are as follows:

"(2) If, as complainant seems to assume, there is any lien upon said lands for the amount of taxes due by defendant, a sale of said lands could not impair or injuriously affect such lien in any way, and complainant is without right to the intervention of this court."

"(4) The complainant does not allege that defendant has conveyed or is about to convey said lands with intent to hinder, delay, or defraud the complainant, or the state, or any subdivision thereof, or any other creditor; nor does he allege any other illegal intent on the part of defendant, but merely states what he takes to be the effect of a sale of said lands. In other words, the complainant seeks by his bill to accomplish the ends and purpose of an attachment in chancery without making the necessary averments."

"(7) This court is not authorized to render a personal decree for complainant's demand. Code 1906, § 4740, is exclusive of all other remedies, and provides a specific method for the collection of back taxes or taxes on property that has escaped taxation."

"(8) The tax collector alone is entitled to collect back taxes on personalty."

"(9) Back taxes on personalty are not collectible by the sale

of lands, but only by distress of personalty, or other proceedings affecting personalty."

"(10) The amended bill was not filed by leave of court, and is not one that should be allowed to be filed herein, since it it not germane to the original bill and is a new and independent suit."

"Wherefore defendant prays that said bill be dismissed," etc.

The other grounds of demurrer are manifestly untenable and need not be discussed. The appellant applied for an appeal from the decree overruling the demurrer, to settle the principles of the cause, and the court very properly refused to grant the appeal, since there were no principles to be settled, and an appeal would only have resulted in vexatious delay and expense. Defendant then filed on June 18, 1908, its answer, but not under oath, practically denying all substantial allegations of the bill. The answer is a mere wholesale denial of any indebtedness by reason of said taxes in any way whatever. Counsel then agreed in writing that the assessments for the years 1886 to 1904, inclusive, were duly made by the state, county and municipal authorities as detailed in the bill. The cause was then set down for hearing upon the issue docket upon the pleadings and proof, and the court rendered a final decree against the appellant for the sum of $32,823.38, with interest upon said amount at six per cent per annum from the date only of the decree; taxes not bearing interest as such. Both the original and amended bills were duly sworn to; but there was no waiver in either of an answer under oath. This appeal was prosecuted, and the contentions following are presented:

The fourth ground of the demurrer may be disposed of at once by the observation that this is not an attachment in chancery, and has no aspect of that sort, and that it does sufficiently aver that the appellant would be rendered insolvent by the sale of its remaining lands, and that its purpose was to so render itself insolvent and escape the payment of its taxes justly due. The averment of the bill is a sufficiently clear one that this appellant

had already sold all of its lands down to about 15,000 or 20,000 acres, and that it was doing all in its power to get rid of that balance as rapidly as possible, with the view of defrauding the state, county, and city of the revenue justly due.   It must be noted just here that after the final decree of this court in case of *Adams v. Delta & Pine Land Co.*, 89 Miss. 817, S. C. 42 South. 170, adjudging these taxes to have been duly and legally assessed, the appellant no longer stands in the attitude of contesting the legality of the taxes; but its defense has degenerated into a miserable effort to defeat by various crafty devices, dealt with in preceding decisions in this case, and its subsequent conduct, the payment to the government of the just taxes due for the protection that government has been extending to it for years past.   The appellant occupies just precisely that very unenviable attitude.

The tenth ground of demurrer is not well taken, since, within the principles announced in the case of *Belzoni v. Yazoo, etc., R. Co.,* post ——, 47 South. 468, recently decided, the amended bill did not make any new case.   It proceeded upon substantially the same facts; the only difference being that it asked additional relief, a personal decree, based upon the final judgment of this court rendered between the filing of the original and amended bills, adjudging these taxes to have been legally assessed and to be a legal and proper charge, as taxes, against the appellant.   It is true the original bill merely sought an injunction to preserve the *status quo* of the lands pending final decision of this court as to the validity of the taxes, the result being also, however, to establish most of them as debts; but that injunction was granted by reason of the very same state of facts substantially, relating to the very same taxes, upon which the prayer for a personal decree was based, and in no proper legal sense can the amended and supplemental bill be said to have presented a wholly new and different case from that made by the original bill.   The principles announced in the case of

*Belzoni v. Yazoo, etc., R. Co.,* post —, 47 South. 468, perfectly cover this proposition.

The seventh ground of demurrer presents the most serious contention made by the appellant, and that contention is that the chancery court could not render a personal decree for these taxes, and that section 4740, Code 1906, is exclusive of all other remedies, and provides a specific remedy for the collection of back taxes, or taxes on property that has escaped taxation by reason of not having been assessed. Several contentions, under this ground of demurrer, are developed in argument with very great ability by learned counsel for appellant, and we will take them up in their order. It will first be necessary to set out Code 1906, § 4256 (which was first introduced into our law in Ann. Code 1892, § 3747, and Code 1906, § 4740. Those section are as follows:

"4256. *Taxes a Debt Recoverable by Action.*—Every lawful tax levied or imposed by the state, or by a county, city, town, village, or levee board, is a debt due by the person or corporation owning the property or doing the business upon which the tax is levied or imposed, whether assessed or properly assessed or not, and may be recovered by action; and in all actions for the recovery of taxes the assessment roll shall only be *prima. facie* correct."

"4740. *Duties of Revenue Agent.—To Make Additional Assessments.*—After the expiration of the fiscal year in which taxes become due should the revenue agent discover that any person, corporation, property, business,, occupation, or calling has escaped taxation by reason of not being assessed, it shall be his duty to give notice to the tax collector in writing, and the collector shall, within ten days thereafter, make the proper assessment by way of an additional assessment on the roll or tax list in his hands, and give ten days' notice in writing to the person or corporation whose property is assessed, and all objections to such assessment shall be heard at the next meeting of the board of supervisors of counties or board of mayor and

aldermen of municipalities. The board of supervisors or mayor and aldermen shall also be notified in writing by the collector of said assessment, and the state revenue agent may appear at said meeting, and an appeal to the circuit court may be taken from the order of the board approving or disapproving such assessment by either party. If the assessment be approved and no appeal be taken, and the taxes shall not be paid within thirty days thereafter, the property, if it be real estate, shall be ordered sold as provided by section 4367, and if it be personalty, the tax collector shall proceed to collect by distress or otherwise. If the tax collector shall fail or refuse to make an assessment and report the same as herein required, he shall be liable on his bond for the amount of taxes properly collectible and ten per cent damages thereon. If the assessment rolls be in the hands of the assessor at the time the revenue agent makes discovery of property which has escaped taxation, he shall give the required notice to the assessor, who shall make the proper assessment, and give the required notices to the owner of the property and to the board of supervisors or mayor and aldermen, under like penalties for failure as provided against the collector, and like proceedings shall be had. When any taxes shall be collected under assessments made as herein required, the revenue agent shall receive therefor at the time of collection the same compensation allowed him by law for other collection."

It is first insisted, then, that Code 1906, § 4256, making taxes a debt, and providing for their recovery by action, has no relation to back taxes, or taxes which have been back-assessed on property which has escaped taxation by reason of not having been assessed. It is said that the machinery for the collection of such back taxes and the method for their collection are provided, and provided alone, in said section 4740, and that the method therein provided is exclusive. This contention is manifestly unsound. There is nothing in either of the two sections— 4740 and 4256—providing that the remedy in section 4740

shall be exclusive, or providing that the remedy provided by section 4256 shall not apply to ordinary taxes assessed in the ordinary way. The manifest purpose of the legislature in enacting section 4256 was to provide an individual remedy, and to create a new right by which the essential nature of the obligation for taxes as taxes should be changed from the nature such obligation had as taxes alone to the nature or quality they would have as debts, and thus to give to the sovereignty a better right, and an additional and more effective remedy for the collection of taxes. In order to hold that this new remedy applied alone to back taxes, we would have to rest such holding upon nothing at all except the bald fact that one set of taxes had been assessed in the ordinary way and that the other set of taxes had been back-assessed in an extraordinary way. In other words, the new remedy manifestly applicable to all taxes, would be denied application to the one set of taxes, and given application to the other set of taxes, not because of any inherent difference in the nature of the taxes as obligations, but solely because, being of the same nature, 'they had merely been assessed in a different mode. This, of course, is utterly untenable. Along this track of reasoning the learned counsel for appellant have much to say to the effect that the chancery court will not be transformed into an agency for the collection of taxes, etc., and that taxes are universally collected by the government through the ordinary tax agencies, etc. And many authorities are cited to support this perfectly elementary proposition. Of course, these propositions are generally true. The question here is not whether they are generally true, but whether this section 4256 has not introduced a new remedy for the collection of taxes, and the authorities cited so diligently from states not having this sort of statute, of course, have no manner of application here. In other words, the legislature must manifestly have meant to add to the remedy the state had for the collection of taxes a new remedy, by the new method provided for in section 4256, and that method was, of course, applicable to the collec

tion of all taxes. The mere fact that Code 1906, § 4740 provided that the method should be (where real estate was involved) by a sale of it, as provided by Code 1906, § 4367, and (where personalty was involved) by "distress or otherwise," does not at all conflict with the provision for another and additional remedy provided by section 4256; nor does the fact that the party who shall do the collecting is, under section 4740, the tax collector, at all militate against the right of the revenue agent to bring the suit provided for in section 4256, enforcing that other additional remedy. If the remedy by section 4740 is desired to be pursued, the tax collector works it out. If the remedy provided by section 4256 is desired to be pursued, the revenue agent works it out. These questions as to who shall work it out are mere incidental questions of administration.

It is also said by learned counsel for appellant that the language in section 4256, that these taxes, treated as debts, may be recovered by "action," because of the use of the word "action," excludes the right to proceed in the chancery court. The law has armed the revenue agent, and armed him properly, with the amplest and fullest authority to sue in either a court of law or equity under Code 1906, §§ 4738, 4742, and 4743. If it be said that the only right to bring this action is to be found in this particular section 4256, the answer is that, whilst that is perfectly true, the construction which would make the word "action" relate to the circuit court alone is papably too narrow. What possible reason could be assigned for a purpose, on the part of the legislature, to restrict the revenue agent to a court of law for the recovery of taxes treated as a debt, in all cases, universally? Nothing is easier than to conceive of cases so complicated in their facts, and presenting so many difficulties as to the collection of taxes, as that the machinery of the court of chancery alone is elastic enough to deal effectively with the situation. In fact, no better illustration of this statement can be found than is furnished by the evidence in the long and vexatious litigation disclosed in this very cause. It would have

been exceedingly easy, for the legislature to have said, if they had so meant, that the remedy should be pursued alone in the circuit court. The legislature has not said so, all reason is against such a view, and the word "action" must be so construed as to work out what appears clearly to have been the purpose of the legislature; and we hold, accordingly, that it empowers suit in either court. *Morris Ice Company v. Adams,* 75 Miss. 410, 22 South. 944, held nothing except that a personal judgment for taxes could not be rendered in that particular proceeding, which was nothing but an appeal from an order of the board of supervisors making an assessment. Since the board of supervisors had no jurisdiction to render a personal judgment for taxes, an appellate court, reviewing its action, could render none. That, and that only, is the scope of the decision in *Morris Ice Co. v. Adams, supra.*

It is again earnestly urged that the remedy provided for the collection of taxes in section 4740 should be the only one pursued, for the reason that otherwise, if personal judgments are to be rendered for taxes, great hardship would result and great inconvenience be encountered by reason of the fact that mistakes are frequently made, by reason of erroneous assessment, as to ownership of property, and by reason of the further fact that in the lapse of time the evidence that would disprove ownership may become lost or destroyed, etc. This is nothing but the argument *ab inconvenienti.* It has no logical effect in establishing the proposition contended for. The same harshness of result, the same inconveniences in the remedies provided by law, are encountered oftentimes in many other cases. The argument might properly enough be made to the legislature. It is out of place here. Courts cannot be influenced, where otherwise the line of decision is plain, by arguments arising purely *ab inconvenienti.* Nor is there anything in the proposition that the remedy provided by section 4740 should be exhausted before resort is had to the remedy provided for by section 4256. Three authorities are cited in support of this proposition, but

they all apply only in the absence of statutes like section 4256. We are therefore clearly of the opinion, first, that the remedy provided by section 4740 is not exclusive of the remedy provided by section 4256, where back taxes are involved; but that either may be pursued without reference to the other; the remedy provided by section 4256 being merely cumulative and additional to that provided in section 4740.

The next contention argued, with surpassing ability by the learned counsel for appellant, is that, at least as to the taxes for the years 1886 to 1892, inclusive, there could be no personal decree rendered, because section 4256, appearing first as Ann. Code, 1892, § 3747, cannot constitutionally have any retroactive effect as to these taxes for the years specified, since that statute not only creates a new remedy, but also a new right. A very ingenious reply is made to this contention by the learned counsel for appellee. He says that this statute only affects the remedy, and not the right, and that, even if it be true that it does change the essential character and nature of the obligation to pay taxes as taxes, so as to convert the essential nature of that obligation into the character and quality of obligation which a debt imports, so as that what was due theretofore in its character as a tax becomes thereafter due in the far stricter character of debt, that nevertheless all these taxes were assessed long after Ann. Code 1892, § 3747, went into effect, and that, since taxes are not due until they shall have been assessed, all these taxes were first due only from the date of the back-assessment, long subsequent to the passage of this statute in the Annotated Code of 1892, and that hence it was competent for the chancery court to render a personal decree for the taxes for these years also, from 1886 to 1892, inclusive.

But we think this reply is more specious than sound. It does not go to the root of the objection. It would be a perfect reply if we treat these taxes for these years as taxes only, and as having only the obligation of a tax as ordinarily understood, or, what is the same thing, if the effort of the revenue agent in

this case be dealt with alone along the line of enforcing the collection of these taxes through the machinery alone provided by section 4740, dealing with the revenue agent as proceeding under the machinery exclusively, and in this case as engaged in the effort to sell these solvent credits under section 4341, according to one of the meanings of the word "otherwise" in section 4740, since he could not get hold of them by distress; they having been scattered all over the commercial world by sale to innocent purchasers for value without notice. We would then have a case of the revenue agent endeavoring to exclusively enforce the collection of these taxes, considered strictly and alone as taxes, so far as their nature and obligation are concerned, and exclusively under the machinery provided by section 4740. If we shut out wholly section 4256, and also shut out wholly the earnest effort made in this suit to enforce it, and look only to section 4740 and the procedure thereunder to collect these taxes from 1886 to 1892, inclusive, treating them as in their nature taxes only, and seeking to collect them alone by the machinery of section 4740, then, of course, it becomes perfectly clear that since the taxes were never due until assessed, never a legal charge until then, and since they were never assessed until long after the Annotated Code of 1892 went into effect, they were exigible according to the provisions of law treating them as taxes alone in their nature when due; that is, when assessed. But that is not this case. It is only half of it. Indeed, it is hardly half of it, since the chief effort here is to collect these taxes, treated, not as taxes, but as debts. These obligations due between the years 1886 and 1892 are not sought, in this suit, to be collected as taxes, so far as the essential and inherent nature of the obligation is concerned; but they are directly and specifically attempted to be collected as debts, and by suit for debt, and they are dealt with as debts as to their inherent obligation, in this proceeding—not as taxes at all, but wholly as debts, with the legal nature of debts, and with a right under section 4256 to collect them as debts.

Now, keeping that view in mind, it is to be noted carefully here, that the effect of section 4256 is not only to furnish a new remedy, but it is to change the essential and inherent nature of the obligation to pay the thing, whether you call it a tax or what-not, so as to make that obligation become the obligation one is under when he owes a debt, and not the obligation one is under when the obligation is merely that of a tax. This undoubtedly is to change the right, and not merely the remedy; and, most manifestly, having the effect to change the right, the section cannot constitutionally have any retroactive effect. Take this further illustrative statement: Suppose the suit is brought as to these taxes to recover them as debts; yet they were not debts when this section, Ann. Code 1892, § 3747, was passed. They were then taxes. They never were debts until after the passage of this section of the Ann. Code of 1892. Since they were not such in their nature prior to that Code, and only became such after the adoption of that Code, clearly they could not be sued for or recovered in their capacity as debts until after that Code went into effect. In other words, prior to the adoption of this section 3747, these obligations were taxes pure and simple, to be dealt with in the mode prescribed by Code 1906, § 7440 alone. The method of suit to recover them is determined by their character as obligations. But since Ann. Code 1892, § 3747, was adopted, two remedies were presented, either of which may be pursued without reference to the other. So it follows that the judgment of the court is correct, in so far as it rendered a personal decree for all taxes except the taxes for the years 1886 to 1892, inclusive, and that its action was erroneous in rendering a personal decree for taxes for these years.

We come now to the last point which the record presents for decision. It is most earnestly insisted by the learned counsel for appellant that the injunction in this case should have been dissolved on the hearing on the merits, and should not have been retained for further proof by the learned court below, for the reasons, first, that since, as is said, the answer under oath

was not waived, and the answer, as is again said, swore completely away the equities of the bill, the complainant was without evidence, on the hearing on the merits of the bill, as to the injunction, and, second, because, since these taxes have been finally adjudicated by this court to be legal charges, and since, if this personal decree for taxes shall be affirmed, and that decree dealt with according to law, by enrollment and otherwise, so as to secure the judgment lien, the injunction is wholly use-less.   On reason and principle, the second proposition is manifestly sound.   Counsel for appellant are here, as in respect to leave having been obtained to file the amended bill, mistaken. Such leave was granted; but the answer was not sworn to at all, and cannot be given the effect of a sworn answer.   There is at the end of the answer this statement, signed by counsel for appellee:  "Answer under oath waived."   It is urged that this could not have the effect of such waiver of oath "in the bill," and that it meant that such force was to be given to the answer as usually attaches to a sworn answer.   It would have been easy to give it that meaning by agreement.   We do not know what is meant.   But, this being all there is in the record, the answer is to be treated as unsworn.   The object of the injunction was in part to hold the lands until the machinery of section 4740 could be invoked for their sale, if possible, after this court had declared these assessments valid.   But even if the lands so held by the injunction from sale could have been sold under the machinery of section 4740 for the taxes due on these solvent credits, as most manifestly they could not have been, yet even, in that mistaken view, there would have been no occasion for the injunction when this hearing on the merits was had below, for the obvious reason that there was established by the decree below, when enrolled, etc., a judgment lien on these lands, and all other property of this appellant subject in this state to such judgment lien; and, no matter to whom these lands might have been sold, they could have been pursued under that lien and made to respond to the decree for the full amount of these taxes

and interest.   We are therefore of the opinion clearly that the court below ought to have dissolved this injunction, when it decided the case on its merits, for the second reason indicated. The injunction, if properly issued originally, on the debt theory, should have been dissolved on the hearing, because then no longer needed.

There is nothing in the contention that under Ann. Code 1892, § 4200, the tax assessors and tax collectors during the period when these taxes should have been assessed ought to have been made parties to this suit, for two very obvious reasons:   First, because no such point was made in the court below, and it should not be raised here for the first time; and, second, if the point had been made, the section has no application under the facts of this case.

We have given this case the most careful and painstaking consideration possible.   It follows from the views we have announced:   First, that the action of the court below in overruling the demurrer and in rendering a personal decree against the appellant for all the taxes herein involved, save only those for the years 1886 to 1892, inclusive, was correct, and it is to that extent hereby affirmed; second, that the action of the court below in rendering a personal decree against the appellant for the taxes from 1886 to 1892, inclusive, was erroneous, and the decree in that respect is hereby reversed; third, that the action of the court below in failing to dissolve the injunction at the hearing on the merits was erroneous, and the decree in that regard is hereby reversed.

Let decree be entered here, in accordance with this opinion, awarding appellant the amount of taxes sued for the years 1893 to 1904, inclusive.   Let each party pay half the costs.

*Reversed.*