CARRIER LUMBER & MFG. CO. *v.* QUITMAN COUNTY.

(In Banc.   Nov. 11, 1929.)

[124 So. 437.   No. 27848.]

(Suggestion of Error Overruled Jan. 6, 1920.   In Banc. 125 So. 416.)

Shands, Elmore & Causey, of Cleveland, for appellant.

Gore & Gore, of Marks, for appellee.

400

**Griffith, J.**, delivered the opinion of the court.

On the 1st day of February, 1927, the appellant was the owner of certain lands in Quitman county which were regularly and validly assessed for taxes and to the appellant, by name, as the owner thereof. Appellant failed to pay the taxes due on said property for the said year, and on the first Monday, the 2d day of April, 1928, the tax collector sold all said lands to the state, and duly made and filed his list showing said sale. The said sales and the list thereof appears regular on their face, and apparently convey the title to the state.

On July 3, 1928, appellee, Quitman county, filed its declaration in the circuit court of said county demanding a personal judgment against appellant for the amount of the taxes alleged to be due to said county by appellant on said lands for the said year, 1927; and in the course of the trial appellee took the position, and was allowed to offer proof, that the tax sale aforesaid, although regular and valid on the face of the record, was in truth invalid because of facts de hors the record; and the trial court, being of the opinion that the extrinsic proof of invalidity was sufficient, entered a judgment in favor of the appellee county for the amount of the county taxes.

The action was instituted under section 4256, Code 1906 (section 8189, Hemingway's 1927, Code), which reads as follows: "Every lawful tax levied or imposed by the state, or by a county, city, town, village, or levee board, is a debt due by the person or corporation owning the property or doing the business upon which the tax is levied or imposed, whether assessed or properly assessed or not, and may be recovered by action; and in all actions for the recovery of taxes the assessment roll shall only be prima-facie correct." In Delta & Pine Land Co. v. Adams, 93 Miss. 340, 48 So. 190, 193, it was said by our court that it was and is the purpose of this statute "to give to the sovereignty a better right, and an additional and more effective remedy for the collection of taxes." Relying upon this, it is the first argument in support of this judgment that, the taxes being a debt, nothing but the payment thereof in money will satisfy the statutory obligation to the county—which argument, when examined, is found in its final analysis to be that the assessed owner of the land must pay the money due, although his land has been sold to the state; in other words, if the sale is valid, the taxpayer shall lose his money and also his lands. That this is an impossible proposition little beyond a statement of it is necessary to a demonstration.

It must be that it is as much required under this statute as in any other case that, in order that a plaintiff may recover in an action of debt, there must be a debt due. In McLaran v. Moore, 60 Miss. at page 382, the court said: "It is true, that by its purchase, the state becomes owner of the land, and the taxes before due are discharged as a demand against the former owner. After the sale, and during the period allowed for redemption, the state has an inchoate title to the land, which may or may not ripen into a perfect one; but the sale being made, the personal liability of the owner is discharged and thereafter only the land is debtor for its taxes." Since under the plain words thus quoted the sale discharged

the personal liability of the owner, it follows that there was no personal debt upon which the action in this case can rest.

But the argument mainly relied upon is that the sale to the state was void, that the title of the state is likewise void, and that in consequence the tax debt has not been discharged by the sale. Conceding, but not deciding, that a void sale and the consequent void title in the state does not discharge the debt, the point is not available to the county suing alone so long as the state continues to hold the conveyance to it as a valid conveyance. Lands are assessed for all ad valorem purposes, in behalf of the state and county, upon one assessment roll, each tract under one assessment, and, when the collection of the taxes is made, the entire amount due to the state and county must be paid in full, and in one inseparable payment, else the land must be sold to enforce the collection, and, when sold to the state, the entire and indivisible title, subject only to the right of redemption, goes to the state. And, when so sold to the state, the conveyance to the state is either good as to the state and county or else it is invalid as to both alike. The state and the county are inseparably bound into the state's tax title; their interests are commixed or blended in that tax title so that the title cannot be good as to the state and void as to the county, or vice versa. If it stands as to the state, it must stand as to the county; if it goes down as to the county, it must at the same time go down as to the state. The tax title is a single entity, and is not separable into parts so long as it stands as legal conveyance in respect to any of the taxes covered therein. In fact, so far as the county is concerned, the county has no title in, or control over, the conveyance; it is solely to the state.

As has already been said, the state's title in this case is valid upon its face, and it is still held by the state. The state has taken no steps to strike the sale or in any manner to avoid or to disavow or disclaim it. The state is no

party to this suit, and, if this action prosecuted by the county alone were allowed to be sustained, we would have the anomalous result that the tax title is declared to be void so far as the county is concerned, and yet it remains good so far as concerns the state; the latter not being a party, and therefore not in any wise affected by the judgment. Such an anomaly when deliberately viewed must be declared to be inadmissible. It is inadmissible as a legal possibility, for otherwise it would be to say that a thing which is an indivisible entity can be void and at the same time valid. Moreover, such an admittance would impair the consistency and harmony of our ad valorem revenue system. Rather we must say, as we have already said, that, so long as the tax title to the state stands good in the hands of the state, as it does here, it must stand good as to the county; that being good on its face it cannot be made otherwise except by action which binds the state, and the action taken in this case, of course, does not, and cannot affect the state.

But it is said finally that the objection that the state is no party to this action is no more than an objection for nonjoinder, and it is insisted that, since the point was not taken by demurrer or plea in the trial court, it cannot be availed of here. From what we have said it is made apparent that the question is not one merely of nonjoinder, but rather it is the deeper one that there was no right of action in the county at the time the action was brought—a defense which may be and is raised under the plea of the general issue. Indeed, it is a defense which could be made on appeal, although the defendant had suffered a judgment to be taken by default, the rule being that, where on the face of the pleadings no cause of action is stated in behalf of plaintiff, no judgment in favor of plaintiff can be allowed to stand, Pease & Dwyer Co. v. Somers, 130 Miss. 147, 93 So. 673—a rule which holds in law as well as in equity. Odom v. Railroad Co., 101 Miss.

at page .656, 57 So. 626; Penn Mut. Life Insurance Co. v. Keeton, 95 Miss. 708, 49 So. 736; 34 C. J., pp. 153, 154.

Reversed and dismissed.

**Anderson, J.**, delivered the dissenting opinion.

McLaran v. Moore, 60 Miss. 376, arose under the Code of 1880. The statute involved first appeared in the Revised Code of 1892 (section 3747). When that case was decided, a tax was not a debt against the owner of the property taxed; under the statute involved it is. The very purpose of the statute was to abrogate the principle that there was no personal liability for taxes.

Since the enactment of the statute it was held in Delta & Pine Land Co. v. Adams, 93 Miss. 340, 48 So. 190, that there are two remedies for the collection of taxes; namely, a sale of the property against which the tax is charged, and an action against the owner of the property to recover the tax. In that case the court said that the latter remedy was an *additional remedy* to the remedy already existing. They are not alternative remedies. The remedy by sale of the property is mandatory—it must be pursued by the tax collector. That remedy was followed in this case—appellant's land was sold by the tax collector of Quitman county and struck off to the state, but the sale was void, therefore neither the state nor Quitman county got anything by the sale. Appellant's taxes were still unpaid when this action was brought. The main object of the statute was to supply a remedy for the collection of delinquent taxes where the proceeding in rem by sale had failed.

The majority opinion holds that the right of action in the state and in the county was joint and not joint and several, and therefore the state and county could not bring separate suits for the taxes due each. The statute does not so provide. The taxes due the state, and the different counties of the state, and the various taxing dis-

tricts of the counties, are all separated by law; the state's share and the shares of the various counties are all laid out and well defined. According to the majority opinion, if either the state or the county refused to take action, the other would be powerless to proceed under the statute. Such a construction of the statute appears to me unreasonable. However, if it be true that the county could not sue unless the state joined in the action, still it would be a mere nonjoinder of a necessary party plaintiff, and that question was raised in this court for the first time, and then not until it was suggested by the court. Section 722, Code of 1906 (section 519, Hemingway's 1927 Code), provides as follows:

"The nonjoinder or misjoinder of a plaintiff shall not be objected to by the defendant at the trial, unless he give written notice thereof with his plea, stating the name of the person alleged to be omitted or improperly joined; and the court or judge, at any time before the trial of the issue, whether of law or fact, may allow the declaration and writ to be amended so as to obviate the objection, upon such terms as may be proper."

Construing that statute, our court has held that the nonjoinder of a plaintiff cannot be availed of in the supreme court for the first time. Darrill v. Dodds, 78 Miss. 912, 30 So. 4; Avera v. Williams, 81 Miss. 714, 33 So. 501; McInnis Lumber Co. v. Rather, 111 Miss. 55, 71 So. 264; Payne v. Stevens, 125 Miss. 582, 88 So. 165; Campbell v. Farmers' Bank, 127 Miss. 668, 90 So. 436. How the majority opinion makes anything out of the fact that the failure of the state to join in this action amounted to more than a mere nonjoinder of a necessary party plaintiff is beyond me.

### On Suggestion of Error.

**Ethridge, J.,** delivered the opinion of the court.

We have carefully considered the suggestion of error and are convinced that the opinion heretofore written is sound. The state has formulated a scheme for the assessment of property for taxation and a procedure for enforcing the collection of the taxes by a sale of the property. It appears that this proceeding under the statute for sale of the land for taxes was made by the tax collector. The proceedings were regular and valid on their face. If they were void they had to be proven by facts aliunde the tax proceeding. Under this scheme of assessment and sale for taxes, the taxes are assessed and collected upon the same rule for practically all the taxing districts other than municipalities.

In the case of McLaran v. Moore, 60 Miss. 382, it was held that a sale for taxes under the statutory procedure for collection of taxes satisfied and discharged the owner of the property from liability for taxes. By section 6103, Hemingway's 1927 Code, Laws of 1912, chapter 230, amending Code of 1906, section 2933, it is provided: "If, upon offering the land of any delinquent taxpayer, constituting one tract, no person will bid for it the whole amount of the taxes and all costs, the collector shall strike off the same to the state, and he shall, on or before the first Monday of May thereafter, transmit to the land commissioner a certified list of the lands struck off by him to the state," etc. The effect of this is for the state to bid amount of the taxes and costs for the land, and the state obtains title to the land subject to the right of redemption, and, of course, is vitally affected by a proceeding to set aside its sale and is a necessary party to any suit for that purpose. Without the state being there represented, a judgment would not affect its right, and the proceeding would be fruitless; it was therefore

sound to hold that the county alone could not enter suit for taxes where such suit would involve setting aside a a sale valid on its face made to the state.

By section 8304, Hemingway's 1927 Code, section 4374, Code of 1906, it is provided: "All taxes due the county or a levee board on lands sold to the state for taxes and listed into the land office shall remain in abeyance until the land be sold, and thereafter such taxes shall be paid out of the purchase-money; but taxes will not accrue on such lands after the fiscal year preceding the one in which the period for redemption expires. On paying the purchase-money of any tax land into the treasury, the land commissioner will certify to the treasurer and auditor of public accounts the amount of the county and levee board taxes due thereon, and the auditor of public accounts shall issue warrants in favor of the proper county and levee board for the same."

It is said in the suggestion of error that it is not competent for the legislature to deprive the county of the money due it for taxes, or to postpone it, under section 100 of the Constitution. Section 100 of the Constitution does not prohibit the legislature from fixing the conditions up which an obligation to the state may become final. It is true that if the obligation had become final and unconditional the legislature could not, in favor of an individual, release a debt due from a corporation or person to a county, or limit it, or postpone it, except as authorized in the section of the Constitution providing for the compromise of doubtful claims; but in levying taxes the legislature may provide, as it has done by the various statutes, the terms on which the obligation will depend. The statute on taxation must be construed together and viewed as a whole, and so viewed they provide that the state will bid the amount of the taxes and costs if no other person does so, and when property is sold to the state for taxes the claims of the counties, levee districts, and other subordinate agencies of the state are in abeyance until the state disposes of the land. Were it

otherwise, and if section 8189 of Hemingway's 1927 Code, section 4256, Code of 1906, was valid as standing alone and apart from the system of listing and equalizing taxation, it would be possible for the governing authorities not only to confiscate property for taxation but to place against the owner of the property debts in addition to the property taken.

The legislature provided a scheme for the collection of the taxes, and the duly authorized regular representatives of the state having followed the statutory scheme of selling property, and in default of other bidders striking it off to the state, the effect was to discharge the obligation of the owner for the taxes if the sale was valid. The sale being valid on its face, it cannot be set aside for facts not appearing on the face of the record, unless the parties in interest are before the court. It is not a case of misjoinder or nonjoinder of parties, but is a case of the absence of an absolutely essential party to the maintenance of a suit to set aside a sale; it being invalid, if at all, on account of disputable facts. The county has no right to maintain a suit on behalf of a state, or a levee district.

The foregoing is all that is deemed necessary to express the views of the court, but I desire to say a few words with reference to section 8189 of Hemingway's 1927 Code, section 4256, Code of 1906; it will be only a personal view for such consideration by the legislature as it may receive. An analysis of section 8189, Hemingway's 1927 Code, section 4256, Code of 1906, discloses that in a suit, as contemplated by the statute for taxes as a debt and not as taxes per se the assessing of the property by the constituted authorities is neither essential nor, if made, binding upon the agency suing for the tax, or the taxpayer, but only prima-facie correct. It therefore apparently gives a right of action without reference to the assessment and without providing any terms for giving notice to the taxpayer of the assessment so as to constitute a personal service before the assessment is made. It seems to carry the idea that such a

suit may be maintained on the tax roll as made by the taxing authorities whether personal notice be given the taxpayer or not; and again it seems to authorize a suit for taxes from the mere fact that a levy has been made by regular authorities, whether the assessment has been made on the property or not. What was said with reference to this section in Delta & Pine Land Company v. Adams, 93 Miss. 340, 48 So. 190, was said with reference to a proceeding to back assessed property for taxation in which not only was notice given to the corporation sought to be assessed, but the assessment had been appealed from by the taxpayer and litigated to a final conclusion so far as establishing the correctness of the assessment was concerned.

It seems to me a doubtful question as to whether this statute can successfully pass between the charybdis of State Revenue Agent v. Tonella, 70 Miss. 701, 14 So. 17, 22 L. R. A. 346; and the scylla of Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565. In the Tonella Case, 70 Miss. 701, 14 So. 17, 22 L. R. A. 346, supra, a statute very much like section 8189 of Hemingway's 1927 Code, was held to be unconstitutional on the ground that it dispensed with an assessment made by the regular assessing authorities provided by the Constitution; and that this could not be done without disturbing and overturning the system of equality and uniformity of taxation as provided by section 112 of the Constitution. In Pennoyer v. Neff, supra, it was held that while the legislature of the state could provide for the disposition of property by some suitable notice, as a proceeding in rem, and would be valid for the purpose of applying the property to any legitimate demands cognizable by the state, still an obligation could not be created by the legislature which imposed a personal liability upon a person, or citizen, without personal summons, or personal notice served upon him, prior to the obligation becoming a final and binding one. It is of course, possible for suit to be brought to subject property to taxation and to take the property in satisfaction of the

tax obligation in an appropriate proceeding, but no such proceeding is involved in the case before us. It is possible to provide for the tax to become a personal debt in an appropriate proceeding for that purpose in which personal notice is given prior to the making of the obligation final, but it is doubtful whether the statute is capable of such construction, and, in my opinion, should receive a careful analysis at the hands of the legislature in the light of the decisions above cited.

Suggestion of error overruled.